U.S. v. Galati. Mr. Schweitzer. Thank you, Your Honors. Brett Schweitzer, the Federal Defender's Office, here representing Mr. Galati, the appellant. At this time, I'd like to reserve three minutes for rebuttal, if I may. Okay. Your Honors, Section 1958 in the Federal Code is no longer a crime of violence after the Supreme Court's case in Johnson, either under the element of force clause of 920- Help me understand why it's not a crime of violence under the element of force clause. I would respectfully submit, Your Honor, that that's not a close call in this case because, first of all, the government- I can't agree with you, but I'm impressed you were coming out of the same place. Sure. The elements of murder for hire under 1958 are travel or the use of an interstate facility with the intent that a murder be committed for remuneration. That's it. This Court, there's no agreement required. There's no actual movement towards a murder or anything else. It's an incredibly broad statute, and that's not just me saying that. That's this Court in, I'll pronounce it the knee case, NG, where this Court said turning away a challenge to 1958 under the residual clause said that 1958 is incredibly broad. There's no agreement required. It's a broad solicitation statute. So the government hangs its hat, of course, on personal injury and says- the jury was charged, that was an element, and they came back and said, yeah, he's guilty of that element. The jury was instructed on count three, as I've said in my brief erroneously, as to that. But that's not important here because we're not talking about the substantive charge on count three. On count four, which is the 924C count, what the judge told the jury was the predicate, the predicate identified for the 924C charge was count three as it's charged in the indictment. That's exactly what the judge told the jury. The jury had the indictment. The indictment certainly does not charge that. There was a mistake elsewhere in the jury instructions on the substantive charge, adding personal injury to count three where it was never charged in the indictment. How do you get around Cotton, Mr. Schweitzer? I mean, don't we have a circumstance here where even if we were to agree with you, isn't this the kind of evidence that the court was looking at in Cotton? Yes, but we're not challenging the conviction. So we're not saying that somehow the conviction on count three is invalid because it was not indicted or anything else. So what we're saying is that when a specific predicate is identified and the jury is told, hey, this is what you have to find, and the jury is directed to the indictment, count three is as charged in the indictment, that's not a crime of violence. Well, but count three incorporates paragraph 15, right? Yes. The very first paragraph, like in all counts and in all indictments, has an incorporation to the facts. But when you look at the charge. And the fact is in paragraph 15 that the victim was shot multiple times. And so that is incorporated in count three. But not in the offense charge, Your Honor. The charging language quite clearly on count three, as opposed to count one, which was charged as an aggravated personal injury, a 1958 violation, the charging language in count three is quite clear, that the lesser, the basic offense was charged. But in a way, Your Honors, I would, I mean, I'm happy to sort of dig into that issue further. Yeah, good. Let's do. Stick with me. You say, you kind of just gave Cotton the back of your hand and said, well, we're not challenging the conviction. But it's the reasoning of Cotton, right, that matters here. The Cotton court seemed to say, you know, that's all well and good, but we don't think it makes a difference in this case. They were prepared to look past some pretty significant stuff, arguably maybe more significant than here, to get to where they got. This is actually a reverse Cotton situation. It's not in Cotton what you had was a charged crime that wasn't in the indictment, a crime that was charged in the indictment, and an element was not instructed to the jury. And the Supreme Court said, fourth prong of plain error, we're going to overlook that. This is different. This is a crime never charged in the indictment, and yet erroneously an element is added. Okay. So this is Lewis. This is more like the Lewis case, the case from this court, or other cases where there's no curing a patent constructive amendment. There was no charge here. Count three did not charge in the indictment. Count three didn't charge the aggravated offense. So just because the judge instructed on it doesn't mean he's convicted of it. That's just a constructive amendment. But he was convicted of conspiracy to do that and to do the contract murder with violence. He was convicted of conspiracy of the basic offense because that's what was charged. I'm sorry, what was charged in the indictment was the conspiracy of the aggravated offense. The jury was instructed that they don't need to find personal injury as a conspiracy. The jury instructions were really screwed up in this case, Your Honor, unfortunately. But as Your Honor's point, Cotton, we actually have a different situation. We're in constructive amendment land, not an erroneous leaving out of a charged element. But even if we proceed to the government's personal injury point, I don't think this is a close case. And here's why. Personal injury is not the equivalent of physical force, which is required by 924C. When you look at the text of the statute of 1958, nowhere does it say anything about force, about physical force. It doesn't even say anything about physical injury like ACCA does. It says personal injury. It doesn't define personal injury, maybe not even bodily injury. Maybe PTSD when the shot goes over the person's head and never strikes the person. Whatever the case. How do you deal with Welsh then? Where it is specifically said on page four of West's law, the court's analysis in Johnson thus casts no doubt on the many laws that, quote, require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion, unquote. And isn't that what we do here? We judge the riskiness of the conduct on what happened during the commission of the crime and what the jury has found. And it's not the retrospective look back that you have in ACCA. It is the offense discharge in the indictment presented to the jury. What did the jury find? The jury found that there was contract murder with the use of a gun, the victim being shot. Similar language appears in Johnson. Right at the end of Justice Scalia's opinion when he was talking about Taylor, the analysis, not the similar language, but the analysis and analytical result seems to be the same. I deal with that, Your Honor, because we're not looking at conduct here. The categorical approach applies to 924C. Well, we're bound by what the Supreme Court says, right? What the Supreme Court is saying in Welsh is we're not questioning the constitutionality of a statute requiring a judge to look at conduct in the case, facts, actual facts, what happened in the case, and judging whether that's risky. That's what Welsh says. That's what Johnson, in fact, said. But that's not what we do in 924C. We don't look to particular facts. We don't look to conduct. In De Camp, the most recent and extensive Supreme Court case on the categorical approach, the defendant admitted in the plea colloquy that he committed a generic, straight-up burglary, and it didn't matter. Understood that that's the blinders that the categorical approach puts on you. But what do you then make of the language from Welsh and the language from Johnson that have been pointed out to you by the members of this panel, where the court seems to be saying and seems to be trying to say somewhat emphatically, don't worry about this being the nuclear bomb that Justice Alito has warned about in his dissent in Johnson because we're really just talking about this thing right here in the Johnson case. Don't think it's going to have these reverberations across things like 924C, 3B, and 16B and others. It's not going to, you know, the shockwave's not going there. I mean, how do you read what Justice Scalia said there, and how do you read Welsh, if not a warning to courts, don't overread this case? It's don't overread this case to situations where the courts are not required to apply the categorical approach. But you're putting the rabbit in the hat. You said that you're putting the rabbit in the hat because what we're asking you is why should we use the categorical approach here, and what you're saying is we've been told that we must use the categorical approach when we should use the categorical approach. That doesn't help us. Okay. Well, if I may, I understood Judge Jordan's point to be a little bit different. I would like to clarify, and I'm sorry if I have the question wrong, and then I'll go right to why the categorical approach applies. What the court said in Johnson and what it said in Welsh is there's no floodgates problem because what the Solicitor General said in those cases was it went through the U.S. Code and picked out every time any statute mentions gauging risk and said all of these dozens and dozens of statutes are now, would be called into question, and the court said no. When you have, when a court applies it to conduct specific real-world conduct in the case, not a problem. However, the gravamen, the rational dissent of Johnson is when it's the ordinary case approach, when it's the categorical approach, then it's a problem. So, Judge Jordan, they were limiting it but not at the line that you're purporting to draw. Well, I'm not purporting to draw any lines. I'm purporting to ask you questions, and among the questions I'm asking is, what do we make of the Supreme Court's reliance in Johnson on the fact that there are enumerated offenses in the ACCA, not in the residual clause itself but in the same subsection as the residual clause, and the court's seeming and repeated reference to that as being the kind of thing that makes that unconstitutionally vague because of that. You know, that's the decision from Judge Rogers on the Sixth Circuit, it's the dissent out of the Ninth Circuit, you know, what's wrong with that reasoning? And if that's the case, then even if we were to agree with you that the categorical approach applies here, wouldn't we end up saying, well, this isn't unconstitutionally vague and you've got a problem? At the last point, yes, I need to prevail on both points. It's not an elements clause violation and Johnson invalidates the residual clause, and it does, and the enumerated offenses distinction is not valid, I would suggest, Your Honor, for a couple of reasons. First of all, the enumerated offenses, the Supreme Court did mention that. It did not mention enumerated offenses as the two reasons why it was invalidating. It was parrying a point of the dissent, but the Supreme Court in Johnson clearly said, look, there are two reasons why this clause is going down, and it's the ordinary case approach and it's the gauging of risk. When you say they clearly said that, if it were really all that clear, you wouldn't have split decisions within circuits and a circuit split, right? It can't be really all that clear what they said, can it? Unless the rest of us just can't read. I don't suggest that, Your Honor. However, there are splits. Obviously, I can't walk away from that. Isn't the heart of the split in these cases that some judges are reading this and saying, the Supreme Court appears to be trying to limit the fallout from this decision by noting the confusion that is created by linking the residual clause to enumerated offenses, and that other statutes like 924C and 16B, they don't have that problem. Two things, Your Honor. That is over-reading. That is over-reading Johnson. Johnson identified two issues, and in Welch, which comes after Taylor, which comes after any other dissent, any other circuit judge who has accepted the government's distinction on that ground, Welch just last week says, look, the reason, the gravim, the primary reason why the residual clause is unconstitutional is because of the ordinary case approach. It's not that, you know, risk is part of it, for sure, but it is, again, to Your Honor's point, it is the application of the risk in this imaginary, imagine the typical case framework. But we are dealing with an imaginary case here. We're dealing with what the jury actually found. We're dealing with what happened in the courtroom. There's no issue that the judge has to think, well, my goodness, what did that charge that he committed, was it convicted of 10 years ago, consist of? We know what happened. We know what he's charged with. We know what the jury found. The Supreme Court knew that it was generic burglary in Day Camp. They knew it was not the burglary of a boat in Shepard. This court knew in any case in which the categorical approach applies that the facts are different now. Why does the categorical? Earlier from Johnson, here's a court, Justice Scalia is talking about in the prior decision, and Taylor is talking about this entire categorical problem. And he says, Taylor explained the relevant part of the Armed Career Criminal Act refers to a person who has three previous convictions, four. This emphasis on convictions indicates Congress intended the sentencing court to look only to the fact the defendant had been convicted of crimes within certain categories, not to the facts underlying the convictions. Taylor also pointed out the utter impracticality of requiring a sentencing court to reconstruct long after the original conviction the conduct underlying the conviction. For example, if the original conviction rested on a guilty plea, no record of the underlying facts may be available. Any plausible interpretation of the law, therefore, requires the use of the categorical approach. None of that fits where you've got, as Judge Roth said, you know what the jury was charged with, you know what the evidence was, and you know what the defendant was convicted of. It's taking the rule, it seems to me, and inflating it to the realm of all the rationality to just take a rule because it's there and march in lockstep and consistently apply it to a circumstance that it seems to me the court never ever intended to apply to and doesn't serve the purpose for which the rule was fashioned. But it does, Your Honor, and the prime, when you look at Taylor, all of the descriptors and the language you quoted about rationale of the categorical approach, that's all true, but the number one rationale, when you look at Taylor, the very first thing is it's demanded by the text of the statute. And it's demanded by the text of the statute by referring to elements, not conduct, and by referring to, by its nature, that's the residual clause. The elements of what? The elements of what the person was convicted of? The elements of the offense that is purportedly the predicate. You look at the elements. You don't look at how it was committed. And that's how this, that's how the categorical approach was born. That may be, assume you're right that that's an important feature of the rationale of Taylor. We're struggling with how do we apply Johnson and how do we apply Johnson in light of Welch, the most recent comment on it. And Chief Judge McHugh has just pointed out to you that the way the court has chosen to describe Taylor is the way he just read it in talking about the utter impracticality of requiring a sentencing court to reconstruct long after the original. We're not, that's, that isn't the world we're in. This is the court that tried the case. Your Honor, it's not like. Again, I don't want to sound like a broken record. How can I figure out this thing? The judge sat through the evidence. Whether instructed wrong or right, the evidence demonstrated the guy hired somebody to shoot a guy and they shot him. What do we do then with the fact that the trial judge in day camp sit and took a plea admission face to face that that gentleman had burglarized, had broken into a building? It's not, the categorical approach is not just about the fog of distance. It's not just about apprendee concerns and jury. It's just not. What the categorical approach is about is, first of all and foremost, Congress's decision in the text of the statute. Congress's decision? I mean, that's really the question, right? That's the problem because you're trying to persuade us that Congress intended that the categorical approach be applied and that Congress intended that murder for hire be understood not to be a crime of violence. I'm not saying that, Your Honor. Of course they intended, but it's a residual clause. It came in under the residual clause. The point here is the elements clause is narrow. To preserve your appeal, shouldn't you at the outset, before the trial, have moved to dismiss counts two and four of the indictment because you are saying that the defendant is charged with murder for hire and that's not a crime of violence, therefore counts two and four are not even applicable in this case? That's a permissible. It's not required for preservation. If a defendant is convicted on what turns out to be inadequate evidence or an inadequate charge, that's... No, but here, this is not an evidentiary matter. You are saying as a matter of law that 924C does not apply to murder for hire because it's not a crime of violence. And don't you have the duty then at the outset to go into the court and say you've got to dismiss these two counts because they are not applicable here because the other two counts are not charging a crime of violence? I wish we had the lawyer in our head, Your Honor, then we wouldn't be on plain error. But it's not a waiver. It's not required. We're under plain error review. There's no doubt about that. So it would have been preferable had that been preserved. I have your reading of the residual clause. I think you are saying that 924 cannot apply to murder for hire. And we are questioning you. Doesn't Welsh require that we look in a situation which is the conduct in which the individual defendant engages that it could be a crime of violence? If we were looking at conduct, if the categorical approach doesn't apply, I'm not here. Granted. I'm trying to convince the court it does apply. Shouldn't you have made that objection earlier on before the case was tried? I wish it had been. We should have. We didn't. We are on plain error. But it's not a waiver. No, it's not a waiver, Your Honor. That puts on me the burden of plain error. If you're saying as a matter of law that murder for hire is not a crime of violence, then doesn't that objection have to be raised earlier than afterwards? No. That's my position. Not in terms of waiver. And that's why I'm going to be rude. No. Rereading DeCamp, and it is not helping at all with the language I read from Johnson with the more recent holding in Wallace, which is not DeCamp is the prototypical example of why the categorical approach is there. So, Your Honor, it comes up. Most of the cases come up in the context of a prior conviction. That's exactly right. That's right, Your Honor. But that doesn't define the limits of the approach. And let me try to explain why. Why not? Thank you. That's what we're trying to get to. You can't assert it as the categorical approach. I get it. I'm trying to get back at you. Why is the categorical approach in the case where the conviction happened? Because even when it's in the case, Congress has said how we're going to identify predicates, it's by their nature or it's by the elements. That's what 924C says. LEOCAL in the Supreme Court said by its nature, elements, requires categorical approach. It's Supreme Court precedent. But LEOCAL again is looking backward. It's not sentencing for the current offense. The point I'm citing LEOCAL for is they looked, the court looked, the reason they looked at that statutory language and said that's statutory language, not because it's a predicate, not anything else. That statutory analysis requires a categorical approach. Does LEOCAL undermine your position? Because as the dissent in the Damiac case pointed out, in the Johnson case, they don't even mention LEOCAL. It's a unanimous Supreme Court opinion. It's applying 16B, the language of which is very, very similar to the 924C statutory language you're relying on. And they take it that that's not vague. Nobody says a peep about it being vague. And when they overrule their previous law with respect to ACCA, there's not so much as a peep about LEOCAL. So doesn't that indicate to you that maybe 924C and 16B, they're just not in the same ballpark with ACCA at all? As far as I'm aware, Your Honor, the Supreme Court does not routinely reach out for other statutes not an issue in the case and say, oh, and this might fall too, and under our reasoning that might fall. The court doesn't do that. So I would not read any, either failure to cite LEOCAL or failure to mention 16B into anything into the issue here. If it were mere silence, maybe that would be true. But in the face of specific language, they do include tying the ACCA residual clause to the enumerated offenses and saying specifically, don't worry about the categorical approach here. It's not going to do crazy things because, look, it has to do with retrospective problems, the impracticality of requiring a sentencing court to reconstruct long after the original conviction. When you put all that together, doesn't that kind of imply, keep this cabined, don't start applying the categorical approach in the case in which the conviction arose? So, no, you won't be surprised. I don't know why because, first of all, I liken the enumerated offenses to a road sign. There's a confusing road sign in ACCA in terms of determining the risk level. And the court did mention that. Yeah, well, that adds to the confusion here. It wasn't a throwaway. They mentioned it a few times. That's fine. They mentioned it a few times. So what we have here is no road sign at all, no guidance at all, no enumerated offenses, no guidance at all. Now, to suggest somehow that that makes things clearer, I think is a stretch, number one. Number two, you know, the point about the other offenses, again, they're not talking about 92014. What they specifically say is, in the language that Your Honor is referring to, is offenses that require specific conduct, that gets us to the categorical approach. And I see my time, you're well into the red, but I would be remiss, Your Honors, this would have to be an en banc issue because of the Hall case. The Hall case I cited in my letter last week where this court, applies the categorical approach to a non-predicate situation. Now, it was 842P2, which is structurally the same as 924C, but what I'm hearing from Your Honors is the notion that when it's in the same case, when it's contemporaneous, the categorical approach doesn't apply. Well, it doesn't when you say it would have to be en banc. Doesn't Johnson and Welch, don't they kind of change the landscape? Yeah, Hall was 2006. Not in terms of the application of the categorical approach. Well, that's the whole question, right? It is. That's the question. You're saying it doesn't, and that's the question, does it or doesn't it? I mean, if we thought that Johnson and Welch changed the landscape, we wouldn't have to take it en banc. Well, it doesn't, Your Honor, because Johnson applied the categorical approach. I just read you the language in the context in which they applied it. In the context. What am I getting into for her, are we? Around and around and around. I can tell you, Your Honors, every circuit, again, as I cited to you, every circuit applies a 924C. Whether they should or not, the rule's gotten away from everybody. Go ahead. Just a real quick on plane error, okay? The case is well briefed. But, you know, if we have this, if we've got the circuit splits we've got and we've got some confusion about what Johnson and Welch mean already, can it really be said it's plane? The error here was plane? Well, I think so, because I think Welch cuts in my favor. The Court's reading Welch in a different way. I would encourage the Court to. We're reading them all, Johnson in a different way. I guess so. I would encourage the Court to take a look back at Welch, because what I think Welch does to clarify, you know, there is no litmus test, as I've said, in terms of a circuit split. But I get it. It's relevant. But I do think Welch clarifies it, because Welch says, when you look at the reasons when the judges who've accepted the government's position, it's all about the second part of, largely about the second part of the Johnson analysis. How do we gauge the risk? The enumerated offenses, all this kind of stuff. And what Welch comes in and says is, look, the primary issue here is the ordinary case problem, because that's logically prior. The first thing you have to do in applying the categorical approach is dream up the imaginary case. Then you're saying, how risky is that? And then compare it to how risky this is. Just even as you're going through that, doesn't that start to indicate to you that maybe this isn't really an area of the law. It's all that plain. And so the error may be not all that plain. I think the error is clear enough to grant relief here, Your Honor. And if it's not, if this court really, if it comes down to clarity of the error, I would suggest that this issue is before the court in several cases. In the Baptiste case, I understand there's a case this afternoon raising Johnson to 16B. So, you know, if the court really determines at the end of the day that my argument founders on clarity, I would suggest that the case should just be held for a decision on this. Because we should have a decision on the merits on this. When you say it should be held, and I know you can't give this up, but is the most logical outcome here to say we don't have to get into any of that? Because if there is error, it's not plain. Done. That would be the easiest way to take care of this case, for sure. I don't want to make it look like an easy punt. But this feels like the sort of thing that the U.S. Supreme Court is going to have to sort out, right? If the circuit split continues, there may be. They may just say we were so clear in Welsh that there's no error. But what I'd say to Your Honor is this. We're talking about a conviction for a potentially unconstitutional conviction, right? And I do think that the happenstance of Mr. Galati's case being scheduled this morning and another case being scheduled this afternoon, or the Baptiste case, where that is in the panel, I would suggest on these grave circumstances, results should not turn on that. The issue is up. It's before the Court. It ought to be decided and not on a punt on clarity. Thank you, Your Honors. Thanks. Good morning, Your Honors. I believe it's still morning. May it please the Court. Mark Coyne on behalf of the United States. It's good to be back here today in front of you. No, it's afternoon. It is, yeah. I think the easiest way to resolve this case is to find that the error is not plain for all the reasons that the panel has already been identifying. That is the easiest, quickest way out if that's what the Court is inclined to do. If that's true, how do we deal with the Henderson case? Well, Henderson says, and I think Justice Scalia's dissenting opinion in Henderson is pretty important to read in looking at the majority opinion in Henderson. The error has to be clear at the time of appellate consideration. That's exactly what the majority says isn't the case. I mean, that may be what Justice Scalia said when he mustered in dissent, but isn't Justice Breyer's opinion for the majority in Henderson saying, measure it as of the time of the appeal? Yes, I said clear at the time of appellate consideration. Oh, I'm sorry. I thought you were saying with the district court. No, no. We took that position in Henderson. We lost. We're completely compliant with Henderson. And what Justice Scalia pointed out was you could have a circumstance rather like what Mr. Schweitzer, my good friend, is concerned about, that the appellate decision that establishes the rule under which a defendant would win doesn't benefit him because it wasn't plain at the time of appellate consideration. It's the next defendant who benefits. And that is, I recognize that that is, it makes one almost uncomfortable to rely upon that reasoning. And at the same time, here what we have is, and I want to be clear about the various residual clause we have in play. We have the ACCA residual clause, unquestionably vague. Johnson obviously has decided that. There are many reasons why it's vague, not the least of which is the confusing list of enumerating offenses and the requirement that you figure out how a non-enumerated offense under residual clause matches the rest. Right. And we'll get into that. But stick with me on plain error, okay? Your argument on Henderson is the majority opinion in Henderson can still be read to leave the door open to the possibility that the error is still unclear, even at the time of the appeal in that case, and it will be the next case where it gets cleared up. Did I hear you right? That's not just my contention. That was Justice Scalia's contention in his dissent. But I want to explain why I don't think the error here could possibly be plain, given that we have three different kinds of residual clauses in play in all of these cases. Well, not every case, but we talk about the three residual clauses almost as if they're interchangeable and they're not. There's the residual clause in ACCA has its own unique set of problems. You have then 16b, which in Leocal the Court emphasized was narrower than the residual clause in ACCA. 16b is not as broad as ACCA. And then you have here a residual clause for a compound offense, 924C. That's even narrower because it's for a compound offense, I submit, than 16b. And finally, the last piece of my plainness argument is one court and one court at the appellate level has reached the constitutionality of the residual clause, 924C3b, whether it's void for vague or not. In that court, 2-1 held it's not void for vagueness for the same reasons that we've essentially articulated in the brief. And given that, you don't have the clarity that you need. Well, when you say that, okay, then maybe that addresses the plain error point. But as a practical matter, if you were to say, if we were to say, yeah, 924C, that's different. It's narrower. You don't have a problem. We don't have a problem with that. Would we still be engaged in precisely the analytical approach that was condemned in Johnson and which Mr. Switzer has been pressing on us here? Would we be saying, well, sure, you can't do that for ACCA. But when it comes to 924C, you have to imagine the ordinary case. And then having cooked up the ordinary case in your imagination, now you have to start assessing risk. In other words, are we saying 924C3 is different but then end up doing exactly what the Supreme Court said don't do in Johnson? Well, what I take from the question, Your Honor, is, in essence, are we still bound by the categorical approach when we're looking at a 924C3B or, for that matter, even C3A question? When you have, when the finder of fact is, and you have in this case a jury verdict establishing beyond reasonable doubt that not only were the other elements of, let's call it, base murder for hire committed, but that an injury actually resulted. And so maybe I'm misunderstanding the question, Your Honor. Yeah, I'm not so sure I'm asking such an elegant question, but what I'm trying to get at is this. If we accepted your argument that 924C3, oh, that's different. That's different than ACCA. Sure, Johnson kicked ACCA, but 924C, narrower, don't worry about it. Okay, we accept that. Then do we not end up stepping through the very same analytical process, which was what the Supreme Court pointed out most dramatically in Johnson, saying two problems, ordinary case, and then risk assessment. And that's what we end up doing under 924C. How is that any different than the analytical construct that you went through in Johnson? I appreciate that, Your Honor, and I didn't think your prior question was an elegantly phrased. I thought that's what you were getting at. And so I can be clear in my answer. You have a provision in 924C, and everybody has assumed that the categorical approach applies, and we are assuming that the categorical approach continues to apply. That is, the ordinary case approach still continues to apply. By virtue of the text of the statute, if you are under the elements or force clause, the predicate offense has to have as an element the use of threat and use of physical force. If you are in the, let's call it the catch-all clause, the offense in question carries with it a substantial risk that force would be used during the commission of the offense. Assuming that rubric, the fundamental problem for Mr. Schweitzer and his client is that there are essential textual differences in the residual clause, the B component of 924C.3, which matches, in this instance, 16B. There are key textual differences from the ACCA. There is no list of enumerated offenses. And not to put too fine a point on that. Well, that's not helping me then. Because as soon as you reach back to the enumerated clause, it's true it doesn't have the enumerated clause. What I'm grappling with and trying to get you to help me with is why is it okay to go through ordinary case and risk assessment under 924C when it wasn't okay to do that under Johnson? How does the existence or not of the enumerated clauses, of the enumerated offenses, change the analytical approach that I have to take? It doesn't, does it? I still have to do ordinary case and I still have to do risk assessment if I'm going to follow a categorical approach under 924C, don't I? Yes, you do if you're going to follow a categorical approach. And the Department has never taken the position that you don't follow the categorical approach, even in this context. I recognize many district courts and I know members of this panel are questioning, and I am sympathetic to those questions. I understand why. Why are we even constrained by a strict categorical approach when you're assessing a compound offense like 924C? In the case in which the conviction occurred. It is. Because another way of looking at any 924C offense is that it doesn't just have the element of presence of a firearm and then the requisite facilitation of the underlying predicate, but you charge along with that all of the elements of the predicate. And then through there you have a jury finding, and presumably it would solve the Sixth Amendment problem, a jury's finding, whether or not force adhered in that offense. And sort of obviously- There would be an elegant way out of the problem. It wouldn't be the problem. I understand why the court is raising that question. It's a very good question, and it's a question a lot of district judges are raising as well. This makes absolutely no sense. But we do it anyhow. It makes no sense, but we're doing it anyhow. There's one sort of definition of madness is continuing to do the same thing over and over again. But I'm hamstrung a little bit because the Department's litigation position is not, at least at this moment of time, that you can jettison a categorical approach. I'm not authorized to make that argument. I can acknowledge sort of the strength of that argument, and I can also point out- It's like angels dancing on a theater. If you went to members of the public and you said, is murder for hire a crime of violence? Of course it is. Yeah. How many people do you think would say- Not really. Because if you look at it this way- Well, no. Do I use a categorical approach, or do I use the modified- It's- What do you mean by violence? I'm a product of a Jesuit education, so I'd say some of the distinctions that we're required to draw in this area are Jesuitical. It is remarkable sort of how fine-tuned it is and how far severed it seems to be from what might have been in Congress's mind back in 1984 when it first enacted this definition of crime of violence. Remember, Taylor, Shepard, those decisions come out after 1984 when this definition is enacted. But I'm assuming for purposes of today that the categorical approach continues to apply. And I wasn't doing a good enough job of explaining why that's not a problem. The court didn't say in Johnson that any statute that requires those two inquiries is in of itself void as vague. And the court also said in response to Justice Alito's concerns about the nuclear explosion and the government's listing of many kinds of offenses- and here's why I am going to go back and bear with me, Your Honor- the government and the dissent next point out that dozens of federal and state criminal laws use terms like substantial risk- stopping there- suggesting that to hold a residual clause on constitutionals to place these provisions in constitutional doubt. Not at all. Almost none of the cited laws links a phrase such as substantial risk to a confusing list of examples. And then Justice Scalia doesn't rest there. He adds that memorable quote, the phrase shades of red, standing alone, does not generate confusion or unpredictability, but the phrase fire engine red, light pink, maroon, navy blue, underscored, or colors that otherwise involve shades of red assuredly does so. Yeah, but if you go to the next sentence it begins with more important. It does. And then it lists the two things that we've been talking about. Ordinary case analysis and how do you measure- how much risk is enough and how do you measure the risk in the first instance. Yeah, ordinary case and risk assessment. So there's one more in this unique context past the 16B context. So I would very much welcome an opinion from this panel that says 16B is not void- or the language, this language, whether it's 16B or 924C is not void as vague. But I would add in the 924C context you have another inherent limiting principle. The predicate offense has to be of a nature, the kind of offense that in the ordinary case would be facilitated by the presence in some way, the requisite way, of a gun. And so let's take an example. Where are you getting that language from? Well, just the nature of it. You can't have a conviction unless the gun itself facilitated, in the narrowly defined ways, facilitated the underlying predicate. And this is why I started and perhaps I should have been more clear. Context, I think, matters here. This isn't just a general definition, as in 16, that applies to many different sections of not only the criminal code but also in the immigration context. This is a specific crime of violence definition embedded within a statute that requires that not only a firearm be present but that the firearm in a meaningful way facilitate the predicate offense. And so I'm drawing from that, it seems to me, an implicit limiting principle. You don't have really the concern about how you sort of establish the risk. It's the kind of offense that in the ordinary case wouldn't be facilitated by the use of the firearm. Let me give you an example. Unauthorized access to a computer. Does a firearm sort of logically lead to the mind as something that would facilitate the commission of that offense? Of course not. But murder for hire or carjacking or strong-arm robbery under the Hobbs Act, which is what is at issue in Robinson, of course. And I recognize, I think, that the force arguments in the Hobbs context are overwhelming. I don't understand how there could be any argument to the contrary, but that's not. That was last week's argument before. As you say, you should have stopped by last week. Well, I listened with great interest to that argument. But if we're focusing, if we're assuming only, and I'll get back to the force clause argument in my case, but if you're assuming only that this can qualify under the residual clause, because of its context, because it's within a statute that requires the firearm actually meaningfully advance the predicate, you have an additional limiting principle. And so what I was trying to articulate earlier is you almost have a, there's the most clear statute, it seems to me, of all of these we've been talking about is 924C. And 924C3B, C3's definition of crime of violence. Section 16 is broader because it's broader in application. It arises in many different contexts. But the court didn't say it was vague. And, in fact, in Leocal, the court went out and said clearly that the residual clause of 16B, that language, was narrower, narrower than the clause at issue in the ACCA. Yeah. We'll speak to Mr. Schweitzer's point that, you know, the court doesn't reach out. And Judge, I think it's Judge Calhoun in his dissent in the Maya makes a point about saying, hey, look at Leocal. They didn't say anything about that. They surely would have is sort of the implication. And we've heard from your opposing colleague here, no, you wouldn't surely have heard that. If Leocal falls, it falls. Do you have a response to that? Leocal's just been undermined. Johnson does it in. I don't think Leocal has been undermined in any way, in part because Leocal emphasizes how 16B is narrower than the residual clause of the ACCA. First, second, Justice Scalia, who was the author of the Johnson opinion, was part of that 9-0, that unanimous opinion in Leocal. And I think, and this is in the Fifth Circuit for its 16B case, that's up, has directed briefing even on, given the presence of Leocal, isn't that precedent that we have to require, even if an argument can be made that Johnson has, is in tension with or has undermined the continuing validity of Leocal. And that's been briefed at length. The point being, it's not up to us to overrule the Supreme Court precedent. It's up to those guys, right? It's up to them. And it's arising in exactly, actually exactly, because, again, Leocal is concerning 16B, the application of 16B in, and I see my time has expired if I answer and then conclude, 16B in a retrospective context, in sort of a recidivism context, not in a current offense context, which is what we're dealing with here in 924C. Your Honor, I'd be happy to address you if you want me to the forced clause argument, but we do think Otero doesn't control here, that Otero had two reasons, offered two reasons for why it was an effective assistance of counsel not to make the objection. The claim, and we think that the language that Mr. Schweitzer is relying upon, it's in one simple paragraph. The court doesn't even say that by itself shows there was an effective assistance of counsel. It simply says that reason alone could be sufficient to find an effective assistance of counsel, but then spends several pages talking about the real problem in Otero, which was that the mental state requirement was recklessness, was less. And I know that issue is very familiar to this court, particularly you, Judge Jordan, given your opinion in Aguilar. Recklessness isn't sufficient to qualify under the forced clause, the elements clause of any of these statutes, at least not that kind of recklessness. Thank you. Thank you, Your Honors. Mr. Schweitzer, I'm sorry, you still have some time. Thank you, Your Honors. I understand the gut checkpoint, murder for hire, murder, anything else? Gut checks are about the residual clause, and they're about the normal, ordinary case methodology. Now, if we accept that Johnson has undermined that, all the force of those sort of arguments go by the wayside, because what we have here is, frankly, again, assuming Johnson applies, we have an obliterated statute. It is not what Congress originally intended. It's been excised. It's been thrown out unconstitutionally vague. So it shouldn't surprise us that there are anomalous results when what's left is the leg of the statute that was hardly ever doing any work from the very beginning. What Congress intended when they enacted 924 was to stop the use of firearms during the commission of offenses. That's right, Your Honor. I totally agree that's one of the reasons. If the jury has determined that a firearm was used in the commission of the offense charged here, the murder for hire, isn't acknowledging that following exactly what Congress meant in enacting that statute? That would solve, again, we have this issue of whether the jury actually found that. But if there is a jury finding, that would solve the Sixth Amendment component, the Sixth Amendment portion of the problem as to why the categorical approach exists. But that's not the whole reason. In fact, the categorical approach was born ten years before Apprendi. So, yes, it is. But I'm talking about Congress's intent in passing 924C. Yes, and Congress's intent, I would venture a guess, was that Hobbs Act robberies would be included and perhaps murder for hire and who knows how many other statutes that have been held to be, like this court in me, have been held to be crimes of violence under the residual clause. So Congress's intent here is scrambled, no doubt. But that's what happens when the Supreme Court throws out half of a statute. But they threw out half the statute on the basis of an analytical construct that they came up with. Congress, as Justice Alito points out, you will search in vain to find anything about a, quote, categorical approach in any of these statutes. I respectfully disagree, Your Honor. Taylor is squarely and Leocow are squarely based on the requirement of elements in the text and the nature of the offense. And what I would point out to Your Honor is this. The Taylor situation or the Leocow, it's what we started out before. The Taylor situation or the Leocow situation is the situation we have before us today. Well, it's the exact same statutory language. It's the same statute in a very different context. It's not, I agree. It's certainly not a prior conviction. However, what I would point the Court to is, in fact, the distinctions, to the extent they exist between the ACCA clause and the 924C clause, only further the argument that the categorical approach is required in the 924C context. The ACCA residual clause, if we step back for a second, that talks about conduct. Justice Alito makes that point in the dissent in Johnson, says, this is craziness. ACCA says conduct. And the majority says, Justice Alito, you're asking us to jettison the categorical approach based on a statutory text of conduct. We refuse to do that. Game over. That is not going anywhere. And when you look at the 924C clause, it doesn't say conduct. It says nature. That's more driving towards the notion of categorical approach than anything in the ACCA residual clause. So I would suggest to the Court that the textual basis, which has always been ground zero for why the categorical approach applies, remains to this day. The fact that it comes up typically in prior conviction cases is not the driving force. That has to do with the fog of looking back and jury findings about Apprendi. Taylor was ten years before Apprendi. That's not the issue. That is a issue, but that is not the driving force. So your argument centers on the assertion that Congress really understood when it passed these residual clause kinds of statutes that someday murder for hire would not be a crime of violence. No. Congress did not anticipate Johnson was going to throw out the residual clause. What Taylor says, what the Supreme Court says Congress thought, was that we did not want to look at conduct. That's why Congress chose the language elements and by its nature. So Taylor says that's why we look to categories. That's why we don't look to facts. Don't look to conduct. Not me saying that. That's the Supreme Court saying that. Now, then we have Apprendi. And then in Shepard, Justice Souter comes along and says, well, Apprendi gives us an additional reason to follow the categorical approach, and that's because we might run afoul of the Sixth Amendment. But that's not where the categorical approach came from. So the fact, if we do, which I'm not conceding, have a jury finding here, that does not undermine the approach. I would strongly urge this court against being the first court breaking with every other circuit and I would respectfully submit without basis in Welsh for jettisoning the categorical approach, which, again, of course, even the government has not taken the position on. Thank you. Thank you very much. Can we get a transcript of the argument? If you can check with Ms. Amato, counsel, and she can walk you through it. I think you're probably so experienced you probably know how to do that. But just check with Ms. Amato on the details, okay? I'll get back to you, Your Honor. I'll take the lead. Okay, good.